RONALD E. AND JERRI L. FISHER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Fisher v. Commissioner
Docket No. 12808-85.
United States Tax Court
T.C. Memo 1987-88; 1987 Tax Ct. Memo LEXIS 84; 53 T.C.M. (CCH) 128; T.C.M. (RIA) 87088; February 12, 1987. Ronald E. and Jerri L. Fisher, pro se. Alan Levine, for the respondent. PANUTHOS
MEMORANDUM OPINION PANUTHOS, Special Trial Judge: The proceedings in this case were conducted pursuant to section 7456(d)(3) of the Code (redesignated as section 7443A(b)(3) by section 1556 of the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2755) and Rules 180, 181, and 182. [1]
Respondent determined deficiencies in petitioners' Federal income taxes for the years 1981 and 1982 in the amounts of $4,398.80 and $2,754.80, *86 respectively. Respondent also determined an addition to tax for each year under section 6653(a)(1) in the amounts of $219.94 and $137.74, respectively, and an addition to tax under section 6653(a)(2) in an amount of 50 percent of the interest due on the deficiencies. Respondent determined the following adjustments to deductions claimed by petitioners on their 1981 and 1982 Federal income tax returns: 1981
1982
Amount
Amount
Claimed on
Amount
Claimed on
Amount
Item [2]
Return
Allowed
Return
Allowed
Schedule C
$24,375
$6,387
$6,988
$4,415
Misc. Deductions
7,097
4,223
12,867
8,473
Interest Expense
3,724
854
*87 After concessions by the parties, the issues for decision are: (1) whether the Bankruptcy Code [3] bars respondent from assessing the 1981 tax against Jerri L. Fisher; (2) whether Jerri L. Fisher qualifies as an innocent spouse under section 6013(e); (3) whether petitioners are entitled to a loss carryover of $12,500 in 1981; (4) whether petitioners are entitled to Schedule C deductions claimed in 1981 and 1982; (5) whether petitioners are entitled to itemized deductions claimed in 1981 and 1982; (6) whether unemployment compensation received by Ronald Fisher in 1982 should be excluded from income in 1982; and, (7) whether petitioners are liable for the additions to tax under section 6653(a) for the years in issue. At the time of filing the petition, petitioners resided at Woodbridge, Virginia. Petitioners refused to stipulate to any of the facts in this case. [4] Therefore, the record is confusing. In addition, at trial petitioners' testimony was vague and ambiguous. The Court advised petitioners that the burden of proof was on them to establish that respondent's determination was erroneous. Despite *88 this admonishment, petitioners failed in many respects to present clear or reliable evidence on many of the issues. We will discuss the facts as they relate to each issue separately. (1) Bankruptcy. Jerri L. Fisher filed for bankruptcy on February 22, 1982. A discharge *89 of debtor was issued on June 15, 1982 by the United States Bankruptcy Court for the Eastern District of Virginia. Petitioners do not argue that the decree discharged Jerri Fisher from liability for 1981 taxes. Rather, they argue that section 507(a)(7)(A)(ii) of the Bankruptcy Code[5] bars respondent from assessing the 1981 deficiency against Jerri Fisher, because that section acts as a statute of limitations which bars assessment of tax unless it is assessed within the time period provided by that statute. This argument is without merit. First, section 507 of the Bankruptcy Code *90 is not a statute of limitations. Rather, it merely sets forth the priority of claims against a debtor's estate. Section 6501(a) of the Internal Revenue Code provides that the period of limitation on assessment of tax is three years after the date the return is filed. The notice of deficiency in this case was mailed on February 15, 1985, which date is less than three years after April 15, 1982, the due date of the 1981 return. Second, section 507(a)(7)(A)(ii) of the Bankruptcy Code on its face relates to an assessment pending before the filing of a bankruptcy petition. Here, the bankruptcy petition was filed before the 1981 return was even due. Therefore, the assessment would not likely have been pending at the time the bankruptcy petition was filed. [6] Thus, we find for respondent on this issue. (2) *91 Innocent Spouse. Petitioners were married in July 1981 and filed a joint return for that year. Because petitioners were married for only five months in 1981, they claim that Jerri Fisher should not be held liable for the 1981 deficiency, and in addition, they argue that she qualifies as an innocent spouse under section 6013(e). Section 6013(d)(3) provides that the liability with respect to a joint return is joint and several. This is so whenever a joint return is filed, regardless of how many months during the year the taxpayers were married. [7] Thus, unless Jerri Fisher qualifies under section 6013(e) as an innocent spouse, she will be liable for any deficiency in tax for 1981 as well as 1982. In order to qualify as an innocent spouse, she must prove that (1) on the 1981 joint return there is a substantial [8] understatement of tax attributable to grossly erroneous items [9] of Ronald Fisher; (2) she did not know and had no reason to know of the substantial understatement upon signing the return; (3) taking into account all of the facts and circumstances, it is inequitable to hold her liable for the deficiency attributed to such understatement; and, (4) that the liability for *92 tax exceeds a specified percentage of her own income in the year ending before the notice of deficiency was mailed. [10]
*93 The burden of proving the elements of the innocent spouse exception is on Jerri Fisher. Adams v. Commissioner,60 T.C. 300, 303 (1973). We conclude that she has failed to prove that she qualifies as an innocent spouse. Jerri Fisher failed to establish either that she had no adjusted gross income in 1984, the year prior to the year in which the notice of deficiency was issued, or that she had adjusted gross income in 1984, but that the understatement of tax (attributable to an unfounded claim for deduction, credit, or basis) exceeded the applicable percentage of adjusted gross income provided under section 6013(e)(4)(A) or (B). Even assuming she could have met the percentage requirement, she failed to present relevant evidence or probative testimony to prove the other requirements of section 6013(e). Therefore, we hold that Jerri Fisher does not qualify as an innocent spouse within the meaning of section 6013(e). (3) and (4) Schedule C Expenses. Respondent determined the following adjustments to Schedule C expenses claimed by petitioners on their 1981 and 1982 income tax returns: 1981
1982
Amount
Amount
Claimed
Amount
Claimed
Amount
Expense
on Return
Allowed
on Return
Allowed
Loss Carryover
$12,500
Car
$ 825
$1,936
$ 568
$1,051
Dues & Publications
125
125
133
12
Freight & Postage
225
228
Legal
1,200
940
230
230
Supplies
75
113
1,054
1,040
Utilities & Phone
1,510
1,042
1,497
1,529
Books
4,900
212
Consultants
1,368
588
Travel & Entertainment
269
346
39
Labor
200
82
Copying
125
72
Depreciation
375
94
Rent
2,200
420
Insurance
250
Laundry & Cleaning
140
Repairs
100
2,197
TOTAL
$24,375
$6,387
$6,988
$4,415
*94 These deductions stem from Ronald Fisher's (hereinafter Fisher) claimed activity as a publisher and author. His publishing activities consisted of a partnership formed to solicit manuscripts from budding authors in the hopes of publishing them. He testified that the firm began winding down its activities in 1980 and was still doing so in 1981. Fisher's activities as an author consisted of his publication through Banner Books of an adaptation of his Master's thesis entitled, "The Concept of Judicial Activism." It appears from his testimony that most, if not all, of the activities associated with publishing this book took place prior to 1981. Included in the Schedule C expenses for 1981 is a $12,500 loss carryover from prior years. This carryover stems from a loss claimed by petitioners relating to the bankruptcy of Banner Books. Petitioners' claim that the loss is for anticipated lost profits from books which were never published. This loss was the subject of this Court's decision in Fisher v. Commissioner,T.C. Memo. 1986-141. We held in that case that Fisher, as a cash basis taxpayer, was not entitled to claim loss for anticipated unreported profits from *95 unpublished books. Rather, Fisher was only entitled to claim a loss for his investment in books which he paid Banner Books to publish, but which were never published. Since Fisher deducted the amount of this investment in 1979, the year of the Banner Books bankruptcy, he was not entitled to claim any additional loss. For the reasons stated therein, we hold that petitioners are not entitled to deduct the $12,500 loss carryover claimed in 1981. With regard to the remaining Schedule C deductions, Fisher's testimony was of a general nature and he did not convince us that petitioners are entitled to deduct the expenses claimed in 1981 and 1982. It is well-settled that petitioners have the burden of proving that respondent's determination is erroneous. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). Petitioners have failed to sustain their burden. While petitioners presented some personal checks to substantiate the expenses, they appear to relate to non-deductible personal items. For example, checks made payable to grocery stores, laundries, cash and apartment management companies appear to be for non-deductible personal expenses. Respondent is thus sustained *96 on these two issues. (5) Itemized Deductions. Petitioners claimed miscellaneous deductions in the amount of $7,097 for 1981 of which respondent initially allowed $4,223 and at trial conceded an additional $2,370. Petitioners also claimed miscellaneous itemized deductions in the amount of $12,867 for 1982 of which respondent allowed $8,473. Petitioners failed to substantiate the disallowed amounts. Thus, petitioners have failed to prove that respondent's determination is erroneous. Welch v. Helvering,supra.
(6) Unemployment Compensation. During 1982, Fisher received unemployment compensation from the State of Virginia in the amount of $3,588. This amount was included by petitioners in gross income on their 1982 tax return. Fisher subsequently won job reinstatement and received full back pay for the period he was unemployed. Under Virginia law, he is now required to repay the amount of unemployment compensation received. Petitioners argue that the amount of unemployment compensation should be removed from gross income for 1982, as it will now have to be repaid. At the time of submission of this case, the issue of repayment had not yet been resolved *97 with the State of Virginia, and Fisher had not repaid the amount received. If a taxpayer receives earnings under a claim of right and without restrictions, the earnings are taxable in the year received, Corliss v. Bowers,281 U.S. 376, 378 (1930), even though the taxpayer may still be adjudged liable to restore its equivalent. North America Oil Consolidated v. Burnet,286 U.S. 417, 424 (1932). When, in a later year, a taxpayer is required to restore an amount received by him and included in income in a prior year, the taxpayer may deduct the repayment from income in the year repayment is made, or, if the repayment exceeds $3,000, reduce his tax liability in the year of repayment by the amount of tax for the earlier year, which was attributable to inclusion in income of the repaid amount. Section 1341(a); section 1.1341-1, Income Tax Regs.
Thus petitioners are not entitled to exclude from their 1982 gross income the amount of unemployment compensation. (7) Additions to Tax. Since respondent determined the additions to tax under section 6653(a) in his notice of deficiency, such determination is presumed to be correct and the burden is on *98 petitioners to show that the determination is erroneous. Bixby v. Commissioner,58 T.C. 757, 791 (1972). We are satisfied based upon the entire record, including the substantial understatement of tax liability and petitioners' failure to maintian adequate books and records, that petitioners are liable for the additions to tax under section 6653(a). Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, in effect for the year before the Court, unless otherwise indicated and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Respondent conceded the following items: (1) the full amounts of the deductions for alimony claimed by petitioners in 1981 ($923) and 1982 ($1,225); (2) an additional amount of $2,370 of itemized deductions for 1981; (3) the full amount of the auto expense claimed ($495) for 1981; and, (5) an additional amount of $298.73 of interest expense for 1981. Petitioners conceded the following amounts: (1) the remaining amount ($1,831) of the contributions deduction for 1982; (2) the remainder of the interest expense ($2,571.27) for 1981; and, (3) the remaining $45 of investment tax credit for 1982. The proper amounts of medical expense deductions depend upon the resolution of other issues and determination of petitioners' correct adjusted gross income.↩
3. 11 U.S.C. section 101 et seq. (1976)↩
4. Petitioners and respondent met for several hours in the weeks prior to trial. Although a stipulation was proposed, petitioners refused to sign at the last moment. At trial, petitioners refused to agree to the barest stipulation, consisting of copies of the notice of deficiency and petitioners' 1981 and 1982 tax returns. At the conclusion of the trial, the Court granted petitioners 30 days within which to submit additional documentation to respondent for the purpose of a stipulation. Upon request of petitioners, this period was extended. Petitioners submitted these documents and a proposed stipulation was drafted by counsel for respondent, who made every reasonable effort to stipulate to documents which might have been helpful to petitioners' case and certainly assist in making a clearer record. However, petitioners again (as in pre-trial proceedings) refused to sign the stipulation at the last moment.↩
5. This Bankruptcy Code section provides in pertinent part as follows: Section 507. Priorities. (a) The following expenses and claims have priority in the following order: * * * (7) Seventh, allowed unsecured claims of governmental units, only to the extent that such claims are for- (A) a tax on or measured by income or gross receipts- * * * (ii) assessed within 240 days plus any time plus 30 days during which an offer in compromise with respect to such tax that was made within 240 days after such assessment was pending, before the date of the filing of the petition; or * * *↩
6. The bankruptcy petition was filed on February 22, 1982. The date shown on the 1981 return is March 22, 1982. The notice of deficiency determining the adjustments for 1981 was issued on February 15, 1985. It appears from the record that the additional tax determined by respondent to be due for 1981 has not yet been assessed.↩
7. The status of husband and wife of two individuals is determined as of the close of the taxable year. Section 6013(d). Thus, petitioners were entitled to file a joint return for 1981 even though they were not married for the full year. ↩
8. A "substantial understatement" means an understatement that exceeds $500. Section 6013(e)(3). ↩
9. The term "grossly erroneous items" means any item of gross income which is omitted from gross income and any claim of a deduction, credit or basis in an amount for which there is no basis in fact or law. Section 6013(e)(2). ↩
10. If the adjusted gross income of the spouse claiming innocent spouse status for the pre-notice year is $20,000 or less then the applicable percentage is 10 percent. Section 6013(e)(4)(A). However, if the pre-notice year adjusted gross income is more than $20,000, then the applicable percentage is 25 percent. Section 6013(e)(4)(B). This percentage requirement only applies in the case of an understatement attributable to an unfounded claim for deduction credit or basis. See section 6013(e)(4)(E).↩